UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-21302-civ-COOKE/TORRES

JOEY MALVAES,

    Plaintiff,

vs.

CONSTELLATION BRANDS, INC.,
a Delaware corporation, CROWN
IMPORTS, LLC, a Delaware
limited liability company, and
SAM'S EAST, INC., an Arkansas
corporation d/b/a SAM'S CLUB,

    Defendants.

_____/

**OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

    This is an action for strict liability and negligence stemming from Plaintiff Joey Malvaes' injuries when a bottle of Corona Extra beer exploded or shattered in his hand while Plaintiff was allegedly holding and using the bottle in a normal fashion. Plaintiff's action is against Defendants Constellation Brands, Inc., the manufacturer/bottler/distributor of Corona Extra brand beer, Crown Imports, LLC ("Crown"), the importer/distributor/seller of Corona Extra brand beer, and Sam's East, Inc. ("Sam's Club"), the retailer of Corona Extra brand beer. Before me is Plaintiff's Motion for Partial Summary Judgment Against Crown ("Plaintiff's Motion") (ECF No. 61), to which Crown has responded (ECF No. 74). Plaintiff contends that he is entitled to summary judgment against Crown on Counts VI (Strict Liability – Design Defect) and VIII (Negligence – Design Defect). Also before me is Defendant Sam's Club's Motion for Summary Judgment on Counts XII through XVII ("Sam's Club's Motion") (ECF. No. 66), which has been fully briefed (ECF Nos. 73, 75). For the reasons stated herein, Plaintiff's Motion is denied and Defendant Sam's Club's Motion is granted in part and denied in part.

1

## I. UNDISPUTED MATERIAL FACTS

Plaintiff's Complaint alleges that on or about December 24, 2013, Plaintiff was attending a party where Corona Extra bottled beer was being served. (ECF No.1). While Plaintiff was holding a bottle of Corona Extra beer, it shattered or exploded. (*Id.*). Corona Extra beer is imported into the United States of America by Crown. (ECF No 61 at ¶ 3.) The particular Corona Extra beer bottle that injured Plaintiff was bottled on November 9, 2013 at a brewery owned by Crown and located in Mexico.

Plaintiff's packaging expert, Jim Goldman ("Goldman"), outlined his opinions as to the causes of the Corona Extra bottle failure in his January 12, 2014 report. (ECF 57-1). Goldman opined, *inter alia*, that the subject bottle would not have failed if the bottle design incorporated a larger heel radius. (ECF No. 66 at ¶ 5). He further stated that improper mold maintenance during the bottle manufacturing, causing inside surface damage, may have been a contributing factor. (*Id.*). Goldman's report does not attribute the cause of the bottle failure to any negligent conduct by the retailer. (*Id.*).

## II. LEGAL STANDARDS

Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the burden of demonstrating through depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, the absence of any genuine material, factual dispute. *Id.*

An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

In order for a movant to be entitled to summary judgment, he bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). On summary judgment, it is not the function of the Court to resolve conflicting views of the evidence. When viewing the evidence on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Id.*

### III. ANALYSIS[1]

#### A. Plaintiff's Motion for Summary Judgment

Plaintiff contends that he is entitled to summary judgment on Count VI (Strict Liability – Design Defect – Crown Imports, LLC) and Count VIII (Negligence – Design Defect – Crown Imports, LLC). I disagree.

#### 1. Strict Liability Due to Design Defect (Count VI)

"The underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect.'" *Samuel Friedland Family Enterprises v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994) (quoting *North Miami General Hosp. v. Goldberg*, 520 So. 2d 650, 651 (Fla. 3d DCA 1988)). "Those entities are in a better position to ensure the safety of the products they market, to insure against defects in those products, and to spread the cost of any injuries resulting from a defect." *Id.*

The seller of a defectively designed product is liable under strict liability as defined in Florida law when the seller "sells any product in defective condition unreasonably dangerous to the user or consumer…if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 84 (Fla. 1976) (citing Restatement (Second) of Torts § 402A); *Brown v. Glade and Grove Supply, Inc.*, 647 So. 2d 1033, 1035 (Fla. 4th DCA 1994); *LeMaster v. Glock, Inc.*, 610 So. 2d 1336, 1337 (Fla. 1st DCA 1992). Design defects must be proven by expert testimony. *Fagundez v. Louisville Ladder, Inc.*, Case No. 10-23131, 2011 WL 6754089, at *2 (S.D. Fla. Dec. 22, 2011) (collecting cases).

Manufacturers, sellers that assemble a product from parts produced by others and sell the product as their own, distributors, and retailers are all potentially liable for placing a defectively designed product into the stream of commerce. *See Cunningham v. Lynch-Davidson Motors, Inc.*, 425 So. 2d 131, 132 (Fla. 1st DCA 1982) (assembler); *Mobley v. South Florida Beverage Corp.*, 500 So. 2d 292, 293 (Fla. 3d DCA 1986) (retailer); *Amoroso*, 630 So. 2d at

---

[1] Because this is a diversity action arising out of an incident occurring in Florida, Florida substantive law applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

1068 ("Since *West*, Florida courts have expanded the doctrine of strict liability to others in the distributive chain including retailers, wholesalers, and distributors.").

Plaintiff argues that he is entitled to summary judgment against Crown on his strict liability claim based on a design defect in the Corona Extra beer bottle because Crown owned the bottling plant where the subject bottle was manufactured, and Crown placed the bottle into distribution by importing it into the United States. Plaintiff further argues that it is undisputed that the subject bottle had a design defect because his expert has opined that the bottle had an inadequate heel radius and an unduly sharp heel curvature.

Plaintiff has not established that he is entitled to summary judgment on his strict liability design defect claim. Numerous issues of fact remain, precluding summary judgment. First, Plaintiff has not met his burden of establishing that the bottle reached him without substantial change in the condition in which it was sold by Crown. Plaintiff's only attempt to demonstrate this is his reference to Crown's discovery response that "it is unaware of any change in The Bottle after the date it was manufactured." (ECF No. 61 at p. 3, ¶ 4). Crown's lack of awareness of any changes to the bottle does not meet Plaintiff's burden of demonstrating that it is undisputed that the bottle, in fact, did not undergo any substantial changes from the time it left Crown's control to the time it allegedly shattered in Plaintiff's hand. Nor has Plaintiff offered any evidence that the bottle was being used in a normal fashion by him when it shattered.

Second, there are genuine issues of material fact as to whether the bottle had a design defect. Plaintiff's bottle engineering and design expert, Jim Goldman ("Goldman"), opined that the heel (base) of the Corona Extra bottle was improperly designed so as to have comparatively reduced tensile strength. Goldman opined that the heel had an inadequate radius and unnecessarily sharp curvature, making the bottle "squarer" on the heel than other comparator bottles. Goldman opines that "negligent heel area design of the 12-oz Corona Extra glass bottle that is squarer than other bottles in the market or even used for bottles for other Constellation Brand beers caused the bottle to fail and caused injury to Mr. Malvaes while he performed a normal, appropriate, and customary activity." (ECF No. 57-1 at 5).

Crown's expert, Thomas L. Read, Ph.D. ("Read"), challenges Goldman's opinion in several ways. Read states that a glass failure analysis, which Goldman's opinion is based on,

4

cannot be conducted without the identification of the potential fracture initiation site on the bottle. (ECF No. 74-2 at ¶ 9). Read points out that Goldman's report indicates that the fracture initiation site was not available. (*Id.*). Without that fracture origin, Read argues that the cause of the fracture cannot be determined. (*Id.*). Read also points out that Goldman's report does not provide any details of the fracture pattern that he identified, and does not describe Mr. Malvaes' statement, which Goldman relied upon. (*Id.* at ¶ 10). Read also notes that he had not had the opportunity to inspect the bottle himself.

Given the contested nature of the alleged fact that the bottle was negligently designed, the lack of evidence that the bottle was used in a normal fashion, and given that Crown's expert had not yet been able to examine the bottle himself at the time of responding to the Motion, summary judgment on the claim for strict liability due to a design defect must be denied. *See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence.").

2. **Negligent Design (Count VIII)**

A plaintiff may bring a cause of action for negligent design of a product. *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80 (Fla. 1976). Whether couched as a strict liability or negligence theory, a tort based on the improper design of a product so as to render it unsafe for its intended and foreseeably probable user relies on a departure from proper standards of care in the plan, structure, choice of materials, and specifications of a product. *See Husky Industries, Inc. v. Black*, 434 So. 2d 988, 991 (Fla. 4th DCA 1983).

For the same reasons previously stated, Plaintiff is not entitled to summary judgment on his negligent design cause of action against Crown. Plaintiff has not established, as a matter of law, that the bottle of beer was defectively designed. While Plaintiff is correct that a *res ipsa loquitur* inference may apply in an exploding bottle case, in order to receive the burden-shifting benefit of that doctrine, the plaintiff must first establish that after the bottle left the bottler's possession, it was not subject to any unusual atmospheric changes or changes in temperature, and that it was not handled improperly from the time it left the bottler's possession up to the time of its explosion. *Groves v. Florida Coca-Cola Bottling Co.*, 40 So. 2d 128, 129 (Fla. 1949). As previously stated, Plaintiff fails to carry his burden of demonstrating an absence of a factual dispute as to these issues. Finally, causation is still an

issue that must be submitted to a jury because Plaintiff has not established that the bottle was properly used when it shattered. *See Pantages v. Cardinal Health 200, Inc.*, 08-cv-116-OC-GRJ, 2009 WL 2244536, at *4 (M.D. Fla. July 27, 2009) ("Whether the handling of the catheter caused the breakage or contributed to the breakage of the catheter or whether the exposure of the PEBAX plastic component part of Defendant's catheters to UV light caused the breakage are issues best suited for resolution by a jury and not by the Court on this record on a motion for summary judgment."). Accordingly, Plaintiff is not entitled to summary judgment on Count VIII.

### B. Sam's Club's Motion for Summary Judgment

Defendant Sam's Club contends that it is entitled to summary judgment on all claims against it: Count XII (Strict Liability – Design Defect); Count XIII (Strict Liability – Manufacturing Defect); Count XIV (Negligence – Design Defect); Count XV (Negligence – Manufacturing Defect); Count XVI (Negligent Handling, Storage or Maintenance); Count XVII (Negligence – Failure to Warn). For the reasons that follow, Sam's Club's Motion is granted in part and denied in part.

#### 1. The Strict Liability Claims Against Sam's Club (Count XII and Count XIII)

Sam's Club argues that it is entitled to summary judgment on the strict liability claims against it because those claims are based on a defect in the design or manufacturing of the beer bottle, and Sam's Club was not involved in either the design or the manufacture of the bottle. Sam's Club is incorrect. A retailer may be held strictly liable for selling a product that is defective in its design or manufacture and results in injury to a foreseeable user. *Mobley v. South Florida Beverage Corp.*, 500 So. 2d 292 at 293; *Amoroso*, 630 So. 2d at 1068. Accordingly, Sam's Club's Motion for Summary Judgment on Counts XII and XIII is denied.

#### 2. The Negligent Design Defect (Count XIV) and Negligent Manufacturing Defect (Count XV) Claims

While Sam's Club may be held liable on a strict liability theory by virtue of the fact that it makes a profit from the sale of the beer bottles, it cannot be held liable under a negligence theory without itself breaching a duty owed to Plaintiff. *See Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083 (Fla. 2d DCA 2006) ("In order to state a cause of action for negligence, a plaintiff must establish that the defendant owed the plaintiff a duty, the

6

defendant breached that duty, the breach was the proximate cause of the plaintiff's injuries, and the plaintiff suffered damages as a result of those injuries."). Plaintiff cites to no authority, and this Court has found none, that holds that a retailer who does not design a product or manufacture a product can be held liable for the product's negligent design or manufacture which results in a latent defect. Accordingly, Sam's Club is entitled to summary judgment on Counts XIV and XV for negligent design defect and negligent manufacturing defect.

### 3. The Negligent Handling, Storage or Maintenance Claim (Count XVI)

Defendant Sam's Club has moved for summary judgment on Plaintiff's claim that his injury was caused by Sam's Club's negligent handling, storage or maintenance of the beer bottle. In response to the motion for summary judgment, Plaintiff states that Sam's Club has failed to provide him with certain discovery. That discovery, however, relates to Sam's Club's history of prior claims regarding similar defective bottles and information regarding quality control procedures, which would purportedly shed light on "whether and to what extent [Sam's Club] was aware of the design defects in the Corona Extra bottle described in Mr. Goldman's expert report." (ECF No. 73 at 4). These issues relate to Plaintiff's theory that Sam's Club had a duty to warn about the alleged design and manufacturing defects, but they do not create genuine issues of material fact as to Plaintiff's claim for negligent handling, storage or maintenance. Plaintiff has not offered evidence to support the claim that Sam's Club's handling, storage, or maintenance of the Corona Extra bottle resulted in the alleged injuries. Accordingly, Defendant Sam's Club is entitled to summary judgment on Count XVI.

### 4. The Negligent Failure to Warn Claim (Count XVII)

As described above, Plaintiff argues that summary judgment in Sam's Club's favor on the claim for negligent failure to warn must be denied because Sam's Club has failed to provide discovery on the issue of Sam's Club's history of prior claims regarding similar defective bottles and information regarding quality control procedures. Sam's Club replies that Plaintiff's expert did not opine that a failure to warn was the cause of Plaintiff's injury and that such expert testimony is required.

"[A] supplier of a product who knows or has reason to know that the product is likely to be dangerous in normal use has a duty to warn those who may not fully appreciate

7

the possibility of such danger." *Cohen v. General Motors Corp.*, 427 So. 2d 389, 390 (Fla. 4th DCA 1983). Because Sam's Club filed its motion for summary judgment prior to the completion of discovery relating to the failure to warn claim, it is not entitled to summary judgment as to Count XVII. *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 871 (11th Cir. 1988) (holding that entry of summary judgment was improper where nonmoving party were deprived of the opportunity to obtain discovery to discover facts necessary to justify their opposition to the motion).

### IV.　CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Plaintiff's Motion for Partial Summary Judgment Against Crown (ECF No. 61) is **DENIED**.

2. Defendant Sam's Club's Motion for Summary Judgment on Counts XII through XVII (ECF. No. 66) is **GRANTED in part** and **DENIED in part**. Sam's Club is entitled to summary judgment as to Counts XIV (Negligence – Design Defect – Sam's East, Inc.), XV (Negligence – Manufacturing Defect – Sam's East, Inc.), and XVI (Negligent Handling, Storage or Maintenance – Sam's East, Inc.) only.

**DONE and ORDERED** in chambers, at Miami, Florida, this 23RD day of June 2015.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*