UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-21302-CIV-COOKE/TORRES

JOEY MALVAES,

   Plaintiff,

vs.

CONSTELLATION BRANDS, INC.,
a Delaware corporation,
CROWN IMPORTS, LLC,
a Delaware limited liability company,
and SAM'S EAST, INC.,
an Arkansas corporation d/b/a
SAM'S CLUB,

   Defendants.
_____/

## ORDER GRANTING
## MOTION TO ENFORCE SETTLEMENT AGREEMENT

  This matter is before the Court on Defendants' Motion to Enforce Settlement [D.E. 206], to which Plaintiff responded in opposition. The Court held an evidentiary hearing on the factual issues raised by the record on May 3, 2016. Upon consideration of the motion, response, and the record, Defendants' Motion is Granted in part.

### *I.  BACKGROUND & FINDINGS*

  This is a products liability action that involved a claim by Plaintiff that he was injured when a beer bottle exploded as he was filling an ice cooler with Corona Extra beer bottles manufactured/distributed by Defendants. Specifically, Plaintiff sued CONSTELLATION BRANDS, INC., who owned the brewery where the product at

issue was produced, CROWN IMPORTS, LLC, who distributed the Corona Extra at issue, and SAM'S EAST, the retailer. After protracted pretrial litigation, the matter finally went to trial on November 2, 2015.

After a four-day trial, the matter was finally placed in the hands of the jury on November 6, 2015. It is undisputed that, as the jury was deliberating, the parties reached a "high-low" settlement agreement conditioned upon the terms of the jury verdict. That same day, the jury returned a verdict in favor of Plaintiff on the negligence claim, as against Defendant Constellation Brands, Inc., in the amount of $301,161.00. The jury found no comparative negligence on the Plaintiff's part.

A judgment for that amount was due to be entered, but for the parties informing the Court immediately upon the return of the verdict that a "high-low" settlement mooted the necessity of a judgment in favor of an Order of Dismissal upon execution of all the settlement documents. As a result, the matter was placed on hold and no judgment was or has been entered.

That settlement was achieved first through verbal communications exchanged while the jury deliberated, between counsel Nicholas Gerson for Plaintiff and Constantine Nickas for Defendants. Emailed communications followed that same day between them. (PX 1). The parties agreed on a monetary settlement for the amount of the jury's verdict but with a maximum and minimum range. Defendant's counsel introduced "confidentiality" as a material term, to which Plaintiff's counsel responded affirmatively but for "record evidence" that was already in the public record. (PX 1 (1:14 pm exchange)). Plaintiff also made clear that payment in ten days was a material term. Defendant agreed as the monetary sum and time for payment, and also

separately confirmed the agreement with respect to confidentiality that "extends to the parties and counsel." (PX 1 (1:47 pm exchange)).

Based upon this verbal and emailed agreement, the parties announced in open court that a high/low settlement had been reached. Then in accordance with the settlement agreement, on November 11, 2015, Plaintiff executed a general release that Defendant received on November 20, 2015. In conjunction with his execution of the general release, Plaintiff's counsel made a hand-written addition to the terms originally included in the form general release regarding the confidentiality of the terms of the settlement. Plaintiff added the following caveat to the confidentiality section of the general release:

> However, this case was tried to a verdict in the United States District Court on November 2-6, 2015. All records and the testimony in evidence and/or the Court file are not confidential. Only this settlement is.

That then prompted a series of back and forth emails with respect to the nature of the parties' confidentiality agreement. Plaintiff argued that his counsel's insertion was merely memorializing that agreement (the material terms of which had been set through the November 6th communications). Defendant's counsel objected to the insertion as beyond the scope of the agreement, and also as being inconsistent with the parties' own discovery confidentiality stipulation with respect to the use and return of confidential documents exchanged in discovery. Defendant argued that counsel's inserted language would excuse counsel breaching that stipulation, which Defendant did not agree to.

When the parties reached an impasse on this issue, Defendants filed the pending motion to enforce the settlement agreement and the parties' confidentiality agreement.

Defendants also moved, ten days after Defendants' receipt of the executed release, for authority to deposit the settlement payment in the Court registry, for distribution upon resolution of the confidentiality dispute. [D.E. 207]. That motion was ultimately granted by the Court [D.E. 212] and the Clerk is retaining those funds in the Court registry pending further Order of the Court. [D.E. 214].

When it became clear that the matter would not be resolved between the parties themselves, an evidentiary hearing on the motion to enforce was held on May 3, 2016, at which each party's lawyers who participated in the November 6th settlement testified. The Court found both lawyers credible in terms of their understanding of the agreement, which further complicates matters, but a review of that testimony plus the Court's review of all the documentation of the original settlement, including the November 6th email exchanges, leads the Court to find that the parties reached a binding settlement agreement that related to confidentiality of the terms and existence of the parties' settlement, but not much else.

### A.    *The Settlement Agreement Should be Enforced*

District courts have inherent power to enforce settlement agreements. *See, e.g., Ford v. Citizens and Southern National Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991);*Kent v. Baker, III*, 815 F.2d 1365, 1398 (11th Cir. 1987). "Indeed, the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, and the exercise of that power is entrusted to the court's sound discretion." *South Beach Suncare, Inc. v Sea & Ski Corp.*, 1999 WL 350458, *6 (S.D. Fla. May 17, 1999). In both the federal and state courts, settlements

are highly favored and will be enforced whenever possible. *See, e.g, Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) ("We favor and encourage settlements in order to conserve judicial resources."); *Spiegel v. H. Allen Homes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2003) ("Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so.").

Importantly for our purposes, oral settlement agreements are just as enforceable as those that are perfectly memorialized in a written document. *See, e.g., Reed v. United States*, 717 F. Supp. 1511, 1516-1517 (S.D. Fla. 1988) (noting that oral settlement agreements are enforceable under Florida law and that "the physical act of signing a [settlement] document is a mere formality where the parties clearly intend to be bound."); *see also Sea-Land Services, Inc. v. Sellan*, 64 F. Supp. 2d 1255, 1262 (S.D. Fla. 1999) (same).

The issue in our case focuses on what the material terms of the parties' settlement are. In considering this question, we follow the principle that parties' settlement agreements are contracts and, as such, should be enforced pursuant to general contract law. *See, e.g., Robbie v. City of Miami,* 469 So. 2d 1384 (Fla. 1985). The words in the agreement are to be given their plain and ordinary meaning, and it is not for the Court to add or subtract any language from the face of a clearly worded agreement. *See Robin v. Sun Oil Co.,* 548 F.2d 554, 557 (5th Cir.1977). Nor should the Court add to a settlement terms that were not contemplated by or agreed upon by the

parties. *See Florida Education Ass'n, Inc. v. Atkinson,* 481 F.2d 662, 663 (5th Cir.1973).

And in reviewing such an agreement on a motion to enforce, the Court has equitable power to enforce those material terms. *E.g., Ford v. Citizens & So. Nat'l Bank,* 928 F.2d 1118, 1121-22 (11th Cir. 1991) (quoting *Adams v. Johns-Manville Corp.,* 876 F.2d 702, 709 (9th Cir. 1989) ("The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract.")); *Blum v. Morgan Guar. Trust Co.,* 709 F.2d 1463, 1467 (11th Cir.1983) (referring to an order enforcing a settlement agreement as "the remedy of specific performance").

### B. *Defendants are Entitled to Specific Performance*

Based upon our review of the record on this motion, we conclude that specific performance is appropriate to enforce the material terms agreed upon before the parties announced, in open court, that a settlement had been reached on November 6, 2016. With respect to the factual dispute relevant here dealing with the scope of the confidentiality agreement that was reached as part and parcel of that settlement, we find that Plaintiff and Defendants are bound by their lawyers' agreement that they and counsel must maintain the terms and existence of this settlement confidential. A meeting of the minds existed only with respect to these considerations.

Moreover, Defendants agreed to the limitation imposed by Plaintiff's counsel that such confidentiality did *not* extend to "record evidence" that had been introduced at trial. Defendants' counsel agreed to that limitation, maybe not expressly but certainly by implication when he then reaffirmed for all to see that the confidentiality extended to the parties and their counsel. By doing so, he impliedly or by acquiescence

confirmed the limitation introduced by Plaintiff's counsel during an emailed exchange on November 6th.

The Court also finds that such limitation, however, does *not* support the entirety of the handwritten insertion of language to the general release signed by Plaintiff on November 11th. That language referred to "records and testimony in evidence" not being confidential for purposes of the release/agreement. That limitation was consistent with the material terms agreed upon on November 6th. But the handwritten insertion added "and/or the court file," which counsel testified would include all documents exchanged in discovery as being excluded from the confidentiality agreement. We find that this is an unwarranted extension of the confidentiality limitation that the parties agreed to on November 6th.

So, the scope of the confidentiality agreement entered into by the parties on November 6th extends to the record evidence presented at trial (whether by witness testimony or exhibits). It does not extend, however, to all documents exchanged between the parties in discovery. Nothing in the settlement agreement touches on that broader issue.

Nor did the material terms of the parties' settlement address what would become of the confidentiality agreement previously entered into between the parties during discovery (which agreement was never approved or adopted by Court order). The topic of the continuing effect of the discovery agreement was not addressed by either party in connection with the November 6th settlement. Therefore, to the extent that the parties engaged in a post-agreement dispute with respect to that earlier agreement, it should not have affected the parties' performance under the settlement.

Plaintiff did not fully perform in this respect by including the handwritten language in the release so as to allow counsel to make public any documents on the exhibit list, whether or not they were introduced at trial. That was the position taken by Plaintiff's counsel during the parties' Rule 7.1 exchanges before the filing of the present motion. That overreach by Plaintiff's counsel's part, whether or not legally supportable on a pure trade secrets analysis, had nothing to do with what the material terms of the November 6th settlement encompassed.

Therefore, the Court finds that Defendants did not breach their obligations under the settlement by not tendering the settlement monies by November 30th, choosing instead to file the pending motion and seek to deposit the funds in the Court registry. The Court finds that specific performance does not require vitiating the settlement and entering judgment on the jury's verdict, as Plaintiff proposes.

Finally, other than the trial testimony and documents actually introduced in evidence at trial, all documents exchanged by the parties in discovery remain subject to the terms and conditions of the confidentiality agreement entered into between the parties during discovery. That agreement remains viable whether or not any documents were identified in an exhibit list as being intended for use at trial. As the parties subsequently agreed on November 6th, only record evidence falls outside the scope of the parties' confidentiality agreement that was part and parcel of the settlement. To the extent the original discovery agreement addresses record evidence, the parties' subsequent agreement modified that aspect of the original. But only as it relates to documents and testimony introduced in evidence. Other documents,

including documents marked as exhibits but not admitted in evidence, remain subject to the original confidentiality agreement between the parties.

### III.  CONCLUSION

A.  Defendants' motion to enforce is GRANTED in part as set forth herein.

B.  The Clerk of the Court is directed to release all funds in the Court registry in this case, plus accumulated interest, to the Trust account of Gerson & Schwartz, P.A.

C.  Pursuant to the parties' settlement agreement, this case is now DISMISSED with prejudice, with each party bearing his/its attorneys' fees and costs.

**DONE** and **ORDERED** in chambers at the United States Courthouse, Miami, Florida this 23rd day of June, 2016.

*/s/   Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge